IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
(Charleston Division)

**MOUNTAIN VALLEY PIPELINE, LLC,**

      **Plaintiff,**

v.                                                    **CIVIL ACTION NO. 2:17cv04377**
                                                                     **(Judge Copenhaver)**

**MATTHEW D. WENDER, in his official capacity
as President of the County Commission
of Fayette County, West Virginia;
DENISE A. SCALPH, in her official capacity
as a Commissioner of the County Commission
of Fayette County, West Virginia; and
JOHN G. BRENEMEN, in his official capacity
as a Commissioner of the County Commission
of Fayette County, West Virginia,**

      **Defendants.**

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Mountain Valley Pipeline, LLC ("MVP") has filed a Motion for Summary Judgment ("Motion"), seeking entry of an order finding and declaring that the Fayette County Zoning Ordinance (or "Unified Development Code"), insofar as it would otherwise apply to MVP's proposed Stallworth Compressor Station, is preempted by issuance of a certificate of public convenience and necessity on October 13, 2017 by the Federal Energy Regulatory Commission ("FERC") pursuant to the federal Natural Gas Act, 15 U.S.C. 717 *et seq.* ("NGA"), and entry of appropriate injunctive relief to effectuate that order. Pursuant to Local R. Civ. P. 7.1, MVP files this Memorandum in Support of the Motion.

As demonstrated below, MVP has shown there are no genuine disputes as to any material fact and MVP is entitled to judgment as a matter of law. Accordingly, pursuant to Fed. R. Civ. P. 56(a), MVP seeks entry of summary judgment in its favor.

I.   SUMMARY OF MOTION.

Although MVP had planned to submit a Joint Statement of Stipulated Facts for the Court's consideration,[1] there are really only two indisputable facts that govern the Court's disposition of MVP's Motion: (1) the October 13, 2017, issuance by FERC of a certificate of public convenience and necessity to MVP, authorizing the construction and operation of MVP's proposed Stallworth Compressor Station (the "MVP Certificate")[2]; and (2) the Defendant Fayette County Commission's November 17, 2017 denial of MVP's application to rezone the property on which the Stallworth Compressor Station will be located, that would have allowed the station to be built in compliance with the local zoning ordinance.[3]

As a consequence of the first fact, the Fayette County Zoning Ordinance (or "Unified Development Code") is preempted and may no longer be applied to the Stallworth Compressor Station.  *See Dominion Transmission, Inc. v. Town of Myersville Town Council*, 982 F. Supp. 2d 570, 576 (D. Md. 2013) ("*Myersville*") (and cases cited therein).  In light of the second fact, there is a justiciable controversy between the parties calling for an exercise of this Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Volvo Const. Equip. North America v. Clm Equip.*, 386 F.3d 581, 592 (4th Cir., 2004).

MVP has set forth below a much more detailed account of the factual record, so that the Court will be aware of the complete context of this dispute. Also provided is additional legal authority reaffirming that FERC Certificates issued under the Natural Gas Act preempt local

---

[1] As reflected in the "Joint Motion to Eliminate Requirement of Filing Rule 26(f) Report of Planning Meeting" (ECF 12), the parties agreed that this case presents purely legal issues and to prepare a joint Statement of Stipulated Facts. MVP, by counsel, submitted a first draft of such a statement to counsel for the Defendants on January 10, 2018.  As of the time of this submission (and despite numerous inquiries), MVP has received no comments on that proposal.
[2] The 110-page MVP Certificate, along with appendices, is available at: https://elibrary.ferc.gov/idmws/file_list.asp?accession_num=20171013-4002.
[3] MVP applied for the Rezoning of the Stallworth Property on August 2, 2017, before the MVP Certificate was issued. During all presentations before the Fayette County Commission, MVP noted that the zoning ordinance would be preempted once FERC had issued a certificate for the Stallworth Station under the Natural Gas Act.

zoning ordinances. However, the Court would be fully justified in entering judgment for MVP based on the facts and law identified in the preceding paragraph alone.

## II.     STATEMENT OF FACTS.

### A.    The MVP Project and the Stallworth Compressor Station.

For more than three years[4], MVP has been planning and seeking necessary approvals to build the proposed Mountain Valley Pipeline project ("MVP Project"), a natural gas pipeline system that will span approximately 303 miles from northwestern West Virginia to southern Virginia, transporting supplies of natural gas produced from the Marcellus and Utica Shale formations in West Virginia to markets in the Northeast, Mid-Atlantic and Southeast regions of the U.S.  In addition to complying with the requirements of other federal and State environmental laws[5], the MVP Project has been reviewed and approved by FERC under the Natural Gas Act, 15 U.S.C. 717 *et seq*. ("NGA"),  the Pipeline Safety Act, 49 U.S.C. § 60101 *et seq.* ("PSA"), and the National Environmental Policy Act, 42 U.S.C. §§ 4321 *et seq*. ("NEPA"). The project has been carefully designed to utilize existing gas and electric transmission corridors when possible, avoid sensitive areas, limit surface disturbance, and minimize the overall environmental footprint.[6] MVP

---

[4] Verified Complaint, § 26.

[5] In particular, the project has been issued a permit under the approved state version of the federal Clean Air Act, 42 U.S.C. 7401, et seq. and has been granted coverage under a General Permit addressing Stormwater Associated with Oil and Gas Related Construction Activities issued by the West Virginia Department of Environmental Protection (WV General Permit No. WV0116815). *See* Declaration of Robert J. Cooper, ¶ 10.

[6] *See* MVP Certificate, p. 57 (observing that "[MVP] participated in the Commission's pre-filing process and has been working to address landowner and community concerns and input.  Specifically, in order to address landowner requests, avoid sensitive environmental resources,…and avoid steep terrain or side slopes, [MVP] incorporated over 11 route variations and 571 minor route variations (during pre-filing), and another 2 route variations and 130 additional minor route variations (post-application filing)…."  The MVP Certificate is available at: https://elibrary.ferc.gov/idmws/file_list.asp?accession_num=20171013-4002

will spend approximately $3.7 billion (including more than $800 million directly in West Virginia) to construct the MVP Project. *See* Declaration of Robert J. Cooper, ¶ 3.[7]

As part of the MVP Project, MVP engineers identified the need for three (3) compressor stations along the pipeline route in order to transport the natural gas to its delivery point. One of those proposed compressor stations, the Stallworth Compressor Station ("Stallworth Station"), is the focus of this civil action.

The Stallworth Station will be located on a relatively secluded tract of land in southeast Fayette County, West Virginia that is owned by MVP (the "Stallworth Property"). Economic projections show that it can be expected to generate more than $800,000 in annual *ad valorem* taxes for Fayette County once the pipeline is in service. Cooper Declar., ¶ 7. Alternative locations for the Stallworth Station were evaluated; however, the Stallworth Property was selected because it was far superior to other potential sites in terms of topography, site access, surrounding land use (including population density and distance from residences) and overall environmental considerations. It will require significantly less cut and fill to achieve a buildable site than alternative locations, is easily accessible from nearby County Route 29, and is located on the top of a hill with dense deciduous forest all around it. *Id.*, ¶ 6.

### B. FERC Jurisdiction and Certificate of Public Convenience and Necessity.

Because it involves the interstate transportation of natural gas, the MVP Project could not be built until a certificate of convenience and necessity had been issued by FERC under the NGA. As explained below, issuance of such a certificate under the NGA completely preempts any state

---

[7] The Cooper Declaration is attached as Exhibit 1 to the Motion.

{B3564529.1}                                                  4

or local law or regulation that would otherwise affect the construction and/or operation of such a FERC-authorized gas transportation project.

In accordance with the NGA, on October 23, 2015, MVP filed its application with FERC for a certificate of public convenience and necessity to construct and operate the MVP Project. Nearly two years later -- and after several open houses, public meetings and comment periods, as well as the submission of large volumes of information addressing virtually all aspects of the project[8] -- on October 13, 2017, FERC issued a certificate of public convenience and necessity to MVP, authorizing the construction and operation of the MVP Project (the "MVP Certificate"). The MVP Certificate specifically authorizes construction and operation of the Stallworth Station. MVP Certificate, pp. 3, 28.

In the MVP Certificate, FERC applied the criteria in its "Certificate Policy Statement" and balanced the evidence of public benefits to be achieved by the MVP Project against potential residual adverse effects. MVP Certificate, p. 12, ¶ 31.  FERC concluded that:

> the benefits that the MVP Project will provide to the market outweigh any adverse effects on existing shippers, other pipelines and their captive customers, and landowners or surrounding communities. Consistent with the criteria discussed in the Certificate Policy Statement and NGA section 7(e), and subject to the environmental discussion below, we find that the public convenience and necessity requires approval of Mountain Valley's proposal, as conditioned in this order.

MVP Certificate, p. 28, ¶ 64.

FERC also specifically addressed numerous environmental topics and other issues pertaining to possible externalities of the project. *See* MVP Certificate, pp. 49 – 107.  In its analysis, FERC addressed substantive comments pertaining to, *inter alia*: (1) geologic resources;

---

[8] *See* MVP Certificate, pp. 9-12, 49-52; Final Environmental Impact Statement ("FEIS"), with appendices, available on FERC's website, at https://www.ferc.gov/industries/gas/enviro/eis/2017/06-23-17-FEIS.asp

(2) water resources; (3) vegetation, forested land, and wildlife; (4) threatened, endangered, and other special status species; (5) land use, recreation, and visual resources; (6) cultural resources; (7) air quality and noise impacts; (8) safety; (9) cumulative impacts; (10) downstream greenhouse gas emissions; and (11) alternatives to the project. (*Id.*). FERC concluded:

> Based on our consideration of this information and the discussion above, we agree with the conclusions presented in the final EIS and find that the projects, if constructed and operated as described in the final EIS, are environmentally acceptable actions. Further, for the reasons discussed throughout the order, as stated above, we find that the projects are in the public convenience and necessity.

MVP Certificate, p. 107, ¶ 308.

### C. The Fayette County Zoning Ordinance.

#### 1. <u>Zoning Districts and Rezoning</u>.

The Fayette County Unified Development Code (2009) (the "Zoning Ordinance") establishes zoning districts for Fayette County, West Virginia.[9] The Zoning Ordinance further establishes a list of permitted uses and "special uses" for each zoning district. *See generally* Zoning Ordinance, Article 1005.

An owner who desires to have property rezoned into a different type of district must file a request with the Zoning Enforcement Office (a subdivision of the Fayette County Commission). The Zoning Enforcement Office will review the application, and the Fayette County Planning Commission will then hold a public hearing on the request. Following its hearing, the Planning Commission makes a recommendation on a rezoning request to the Fayette County Commission. Within fifteen (15) days after the Planning Commission hearing, the County Commission will hold a public hearing to consider the request. Zoning Ordinance, Article 1007.III.A. The County

---

[9] The Fayette County Zoning Ordinance is available at: http://fayettecounty.wv.gov/zoning/Pages/default.aspx.

{B3564529.1}  6

Commission will then endeavor to issue its decision on the rezoning request (taking into account the Planning Commission's recommendation) within ten (10) days after its own hearing. *Id.*

Should a rezoning request be denied, West Virginia planning and zoning statutes, as well as jurisprudence addressing the topic, appear to confirm that the only method of challenging a county commission decision on a rezoning application is through a circuit court action. *See, e.g., W.Va. Code* § 8A-9-1; *Prete v. City of Morgantown*, 456 S.E.2d 498 (W.Va. 1995). Though one part of the Zoning Ordinance[10] states that an applicant may appeal such a rezoning denial to the Board of Zoning Appeals ("BZA"), this appears to be at odds with other parts of the ordinance and with *W.Va. Code* § 8A-8-9, the statute authorizing the creation of Boards of Zoning Appeals.

### 2. Special Use Permits and Building Permits.

After a parcel is determined to be in the proper zoning district (with or without approval of a rezoning request), an owner who desires to construct an improvement (including a "business, structure or building") on property in Fayette County must file an application for either an "Improvement Location Permit" or a "Special Use Permit." A Special Use Permit is required if the proposed use of property is not included on the list of specifically "permitted uses" in the applicable zoning district.

An applicant for a Special Use Permit must request a pre-application conference with the Zoning Enforcement Office, respond to initial comments from that office, and then file a formal Special Use Permit application. Zoning Ordinance, Article 1007.III.C. The Zoning Enforcement Office reviews the as-filed application and then refers it to the BZA for a public hearing. Upon information and belief, the Fayette County BZA meets and holds hearings once per month, on the

---

[10] Zoning Ordinance, Article 1007.III.A.7.

first Monday of each calendar month. Public notice must be provided at least fifteen (15) days prior to the hearing before the BZA. Should the BZA deny the application, the applicant may appeal to the Circuit Court of Fayette County, West Virginia. *Id.*

The Zoning Ordinance also adopts the State Building Code. Zoning Ordinance, Article 5000. Therefore, before an owner of property may erect any structure it must also obtain a Building Permit from the Building Code Official for Fayette County. *Id.* No Building Permit may be issued unless the Fayette County Zoning Office certifies that any proposed structure is in compliance with all zoning district and permit provisions of the Zoning Ordinance.

### D. The MVP Rezoning Application and Efforts to Work Cooperatively with the Fayette County Commission.

Consistent with FERC policy that encourages reasonable cooperation with local authorities,[11] beginning in July, 2017, MVP representatives proactively attempted to work with Fayette County officials to satisfy the requirements of the Zoning Ordinance that would apply to the construction and operation of the Stallworth Station in the absence of a FERC certificate. As a part of that effort, on August 2, 2017, MVP filed a complete "Change in Land Classification" application form, along with all required supplemental documents (the "Rezoning Application") with the Office of Zoning Enforcement for Fayette County, requesting that the Stallworth Property be rezoned from an R-R district to an H-1 district. Cooper Declar., ¶ 8.[12]

---

[11] *See* MVP Certificate, p. 107, ¶309.

[12] The Stallworth Property is currently zoned in an "R-R" or "Rural-Residential" district under the Fayette County Zoning Ordinance. R-R Districts are designed to accommodate single-family housing in areas that may not be served by public sewer facilities and are not yet appropriate for development at higher densities. The Stallworth Compressor Station does not fall within any of the listed "permitted" or "special" uses within the R-R Residential District classification. Accordingly, the Stallworth Property would need to be rezoned as an "H-1" (or "Heavy Industrial") district in order to allow for the construction of the Stallworth Station in a manner that complies with the Zoning Ordinance. Zoning Ordinance, Articles 2001, 4002; Rezoning Denial Order (Motion, Exhibit 2).

Before that submission, MVP representatives had met on July 20, 2017 with the Fayette County Zoning Officer and received direction as to specific information the Zoning Office wished to have submitted in support of the Rezoning Application. In accordance with that request, at the same time it filed the Rezoning Application MVP also submitted the August 2, 2017 Project Summary. *Id.,* ¶ 9 (referencing Exhibit B). The Project Summary describes the nature of the MVP Project and the FERC certificate process, and addresses the following topics: Safety Overview; Emergency Response Plan; Regulatory Compliance Overview; Project Construction; Construction Techniques and Information; Pre-Construction Noise Study; Noise Mitigation; Compressor Station Lighting; Estimated Truck Traffic; and Economic Benefits. Fifteen (15) exhibits (consisting of reports and informational submissions made to FERC) were provided as enclosures to the Project Summary. *Id.*

The Fayette County Planning Commission held two (2) duly noticed public hearings on the Rezoning Application, one on August 28, 2017 and a second on September 7, 2017. At both hearings, several representatives of MVP were present for the purpose of making presentations and responding to questions pertaining to the various subject matter areas addressed in the materials submitted to the Zoning Office.

At the September 7, 2017 Planning Commission hearing, MVP submitted a detailed letter responding to a "Rezoning Review" report that had been submitted by the County Resource Coordinator at the first hearing.[13] At the conclusion of the September 7, 2017 hearing, the members of the Planning Commission who were present voted unanimously to recommend that the Fayette County Commission approve the Rezoning Application.

---

[13] A copy of MVP's September 7, 2017 letter is attached to the Verified Complaint as Exhibit 1.

The Fayette County Commission held three public hearings or meetings on the Rezoning Application, on September 8, 2017, September 15, 2017, and November 17, 2017. At the September 8, 2017 hearing, Commission President Wender asked that MVP prepare written responses to a number of questions or issues that had been raised during the public comment portion of the hearing and by individual Commissioners. MVP's September 15, 2017 letter, providing detailed responses to those questions, was submitted at the Commission's September 15, 2017 hearing.[14]

At the conclusion of its September 15, 2017 hearing, the Fayette County Commission announced that it would schedule a meeting to render a decision on the MVP Application after: (a) FERC had issued a decision on MVP's application for a certificate of public convenience and necessity for the MVP Project; and (b) the West Virginia Department of Environmental Protection ("WVDEP") had issued a determination regarding the status of the MVP Project under the federal Clean Water Act ("CWA," 33 U.S.C. § 1251, *et seq.*), including in particular CWA §401 (governing water quality certifications).[15] There is nothing in the Zoning Ordinance that authorizes the County Commission to delay its consideration of a rezoning request until issuance of such approvals. Moreover, such a delay was at odds with the Commission's obligation to endeavor to issue a decision on a rezoning request within 10 days of the close of its hearing. Zoning Ordinance, Article 1007.III.A. Nevertheless, the Commission decided that it would await decisions on these other pending approvals before deciding whether to grant MVP's Rezoning Application.

---

[14] A copy of MVP's September 15, 2017 letter is attached to the Verified Complaint as Exhibit 2.

[15] On September 13, 2017, in the context of a legal challenge pending before the U.S. Court of Appeals for the Fourth Circuit, the WVDEP voluntarily withdrew and moved to remand to itself the water quality certification it had previously issued to MVP for the MVP Project pursuant to Clean Water Act § 401, based on concerns with inadequate documentation of its antidegradation review process. *See* "Consent Motion for Voluntary Remand," Appeal No. 17-1714 (4th Circuit, Sept. 13, 2017). That motion was granted on October 17, 2017 and that challenge to MVP's compliance with CWA § 401 is no longer pending.

As noted, on October 13, 2017, FERC issued the MVP Certificate. On November 1, 2017, WVDEP issued letters waiving the requirement that MVP obtain a CWA §401 Water Quality Certification.[16] On November 3, 2017, an MVP representative e-mailed a letter to the Fayette County Zoning Enforcement Officer and the County Commission, notifying them of these approvals. In that same transmission, MVP asked that the County Commission schedule a special hearing for November 9, 2017 to issue a decision on the Rezoning Application, so that the Board of Zoning Appeals might be in a position to rule on a Special Use Permit application for the Stallworth Station at its next monthly meeting.[17]

The County Commission declined to address MVP's request for a special hearing date, and instead deferred the matter to its regular meeting on November 17, 2017. At that time, the Commission voted unanimously to deny MVP's Rezoning Application (the "Rezoning Denial"). On January 26, 2018, the Commission issued an Order (the "Rezoning Denial Order") that purports to set forth findings of fact and conclusions of law justifying its denial of MVP's Rezoning Application, "nunc pro tunc to November 17, 2017."  Motion, Exhibit 2, p. 6.

E.  **Actual and Threatened Injury from Application of the Ordinance to the Stallworth Station Construction Activities.**

The MVP Project includes approximately 303 miles of natural gas pipeline, three new compressor stations, four new meter and regulation stations and interconnections, and other appurtenances. Verified Complaint, ¶ 69; Cooper Declar., ¶ 3.  It will cost MVP upwards of $3.7

---

[16] Copies of the WVDEP's November 1, 2017 letters are attached as Exhibit 3 to the Verified Complaint.

[17] The Fayette County Zoning Officer had advised MVP that in order for a Special Use Permit application for the Stallworth Station to be heard at the BZA's next monthly meeting (on December 4, 2017), such an application would need to be submitted by November 9, 2017. Since approval of the Rezoning Application was required before a Special Use Permit application could be considered by the BZA, MVP asked that the County Commission schedule a special hearing for November 9, 2017 to make a decision on the Rezoning Application.

billion to build. Cooper Declar., ¶ 3. Pursuant to the authority granted by the MVP Certificate, MVP plans to construct the MVP Project and place it into service by December 31, 2018. *Id*., ¶ 13. In order to have the full capacity of the MVP Project available by December 31, 2018, it is essential that the Stallworth Station be in service by that date. *Id*., ¶ 14.

The application of the Zoning Ordinance to the Stallworth Station will harm MVP first and foremost by causing it to miss this scheduled completion date. That, in turn, would cause MVP to lose an important source of guaranteed revenue,[18] incur construction contract delay penalties, and have to pay for contractors that are unable to work, waiting for MVP to receive necessary approvals under the ordinance. Verified Complaint, ¶¶ 70, 76; Cooper Declar., ¶¶ 12, 19. It would also cause harm to MVP in the form of reputational damage to its business. *Id*., ¶ 19.

To meet its construction schedule, the MVP Project will be constructed simultaneously across eleven pipeline segments, and there will be separate construction spreads for each compressor station. Since construction of the compressor stations (including the Stallworth Station) will take longer than construction of the pipeline segments, it is important that construction of the Stallworth Station begin even before pipeline construction is commenced. Cooper Declar., ¶¶ 15-16.

In order to comply with the project construction schedule for the Stallworth Station, construction of the station must begin as soon as possible. *Id*., ¶ 16. Indeed, MVP previously estimated that construction needed to start by January, 2018 in order to meet that schedule. Verified Complaint, ¶ 72. Accordingly, immediately after issuance of all federal permits and approvals for

---

[18]Under the long-term transportation service agreements that have been entered for transportation of gas at quantities that account for all of the design capacity available on the MVP pipeline system, the shippers' obligations are not binding until the entire MVP Project is constructed. Once those agreements become effective, however, MVP will receive approximately *$40 million to $50 million per month* in revenue from the shippers under them. *See* Cooper Declar., ¶ 12. Whether any shippers would choose to transport gas on a short-term basis using portions of the pipeline before the project is fully built, and if so for how long, is uncertain at best. *Id.*

the project, on January 16, 2018, MVP filed a letter requesting that FERC issue a notice to proceed with construction of the Stallworth Station (and the other two compressor stations that are a part of the MVP Project). Cooper Declar., ¶ 16.

That request was granted on January 29, 2018, when FERC issued a Notice to Proceed with construction of the Stallworth Station ("Notice to Proceed," attached as Exhibit 3 to the Motion). The Notice to Proceed signifies that MVP has obtained all authorizations required by federal law (or a waiver thereof), and has satisfied all other conditions set forth in the MVP Certificate for approval of work on the Stallworth Station. Notice to Proceed, p. 1. It allows MVP to begin construction of the Stallworth Station immediately, and perhaps get back on a schedule that will allow for completion of the station by the December 31, 2018 target date. Cooper Declar., ¶ 16.

However, the Fayette County Commission's decision to deny MVP's Rezoning Application and the Commission's belief that local law supersedes federal law is in conflict with MVP's right to engage in any of the construction activities authorized by the FERC Notice to Proceed. Should MVP engage in any such site activities, the Fayette County Commission will very likely bring an enforcement action against MVP for violating the Fayette County Zoning Ordinance. Such enforcement activity could include arrests by law enforcement officials and civil actions seeking to enjoin those activities. *See* Ordinance, Article 1003(VI), 1003(VII).

In short, the Commission's stated intention to enforce the Zoning Ordinance to prevent MVP from undertaking construction activities at the Stallworth Property threatens to delay not only construction of the Stallworth Station, but the in-service date for the entire MVP Project. This will cause MVP to suffer harm in the form of lost revenue of $40 million to $50 million per month under its long-term transportation service agreements, and additional delay fees and contractor costs. Cooper Declar., ¶¶ 12, 19. Moreover, MVP would be unable to recover any of these

monetary losses due to the statutory immunity the Commission enjoys as a political subdivision of the State. *See W.Va. Code* §§ 29-12A-5(a)(1) (immunity for liability for legislative or quasi-legislative acts), 29-12A-5(a)(9) (immunity from liability relating to licensing functions). Therefore, these losses constitute a form of irreparable injury. *Chamber of Commerce v. Edmondson*, 594 F.3d 742, 770-771 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury.") These circumstances plainly present an actual controversy between the parties within the scope of the Declaratory Judgment Act, 28 U.S.C. § 2201. *Volvo Const. Equip. North America v. Clm Equip.*, 386 F.3d 581, 592 (4th Cir., 2004).

### III. LEGAL STANDARDS.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir., 2006). In this regard, "the genuineness and materiality requirements express the sound proposition that litigation for its own sake is not a judicious use of resources." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986)).

A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). In moving for summary judgment, a party may cite to particular parts of the record, including declarations and documents. Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has averred that there is no genuine issue as to any material fact, it is incumbent upon the party opposing a motion under Rule 56(c) to direct the court to "specific facts" showing that there is a genuine issue for

trial. *Precision Piping v. E.I Dupont De Nemours & Co.*, 707 F. Supp. 225, 228 (S.D. W.Va. 1989). In applying the rule, "the movant's burden is slight in relation to that of the opponent." *Id.; Dunn v. Nicholas Cnty*. 2015 U.S. Dist. LEXIS 152694, *5 (S.D. W. Va., 2015).

A permanent injunction is a claim for relief that flows from a plaintiff's substantive claims. *Pinnacle Min. Co., LLC v. Bluestone Coal Corp*., 624 F.Supp.2d 530, 540 (S.D. W. Va. 2009). It is appropriately granted when the court has found for the plaintiff on the merits of one or more of its claims and a legal remedy would be an insufficient or inadequate remedy for the wrongs committed by the defendant. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477-78 (1962).

**IV. ARGUMENT: MVP IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE FAYETTE COUNTY ZONING ORDINANCE IS PREEMPTED BY THE MVP CERTIFICATE.**

Under the Supremacy Clause of the U.S. Constitution, federal law is the "supreme Law of the Land." U.S. Const. art.VI, cl. 2. Consistent with this bedrock principle, there are three theories under which federal law may be found to preempt state and local law: (1) express preemption (where the federal statute expressly preempts state and local laws); (2) conflict preemption (where the federal and state laws irreconcilably conflict); and (3) field preemption (where Congress intends to exclusively occupy a legislative field). *Myersville*, 982 F. Supp. 2d at 576 (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747-48 (1985)). The Fayette County Zoning Ordinance, insofar as it would apply to the Stallworth Station, is preempted by the issuance of the MVP Certificate under both field and conflict preemption principles.

### A. The MVP Certificate Preempts the Fayette County Zoning Ordinance Under the Principle of Field Preemption.

The MVP Project involves the interstate transportation of natural gas and therefore is subject to the NGA. As explained in *Myersville*, "the preemptive effect of the [NGA] is well established." *Myersville*, 982 F. Supp. 2d at 576. "Congress intended to occupy the field to the exclusion of state law by establishing through the NGA a comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce.'" *Myersville*, 982 F. Supp. 2d at 577 (quoting *Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 243 (D.C. Cir 2013)). Accordingly, "the NGA and the federal regulations promulgated pursuant to that Act occupy the field with respect to *siting, construction, or operation* of natural gas facilities" – including compressor stations. *Myersville*, 982 F. Supp. 2d at 570, 577 (emphasis added).

In addition, the PSA authorizes the U.S. Department of Transportation ("DOT") to prescribe and enforce federal safety standards for pipeline facilities and persons engaged in the transportation of gas. With the exception of qualified state damage prevention laws (not at issue here), the PSA expressly preempts state and local authorities from regulating the safety standards or practices of interstate gas pipeline facilities. 49 U.S.C. § 60104(c).[19] FERC-jurisdictional gas transmission lines are interstate gas pipeline facilities under the PSA. Accordingly, the PSA expressly preempts the Zoning Ordinance to the extent that by it the Fayette County Commission seeks to impose safety standards on the construction and operation of the Stallworth Station. 49 U.S.C. § 60101(a)(6).[20]

---

[19] DOT safety standards apply to the design, construction, testing, operation, and maintenance of compressor stations. See, e.g., 49 C.F.R. §§ 192.163-192.173.

[20] One of the issues that the Fayette County Commission required that MVP address as a part of its consideration of the Rezoning Application was the "number of serious incidents (e.g., explosions) over the last five (5) years at transmission pipelines and compressor stations across the country." As noted in MVP's response, such data is compiled by the federal Pipeline and Hazardous Materials Safety Administration, and was addressed in the Final Environmental Impact Statement for the MVP Project. *See* Verified Complaint, Ex. 2, p. 6. MVP was also required

Together, the regulatory program imposed by the NGA and PSA "governs virtually *every aspect* of the transportation and sale of natural gas. It includes provisions for determining the price at which natural gas may be sold, whether natural gas facilities may be built or modified, *where they may be located*, the methods by which they are constructed, and the safety standards that must be observed." *Algonquin LNG v. Loqa*, 79 F. Supp. 2d 49, 51 (D.R.I. 2000) (emphasis added) (citing *Schneidewind v. ANR Pipeline*, 485 U.S. at 293, 306 (1988)); *ANR Pipeline Co. v. Iowa State Commerce Commission*, 828 F.2d 465, 470 (8th Cir. 1987) (Iowa may not impose its own safety standards on facilities); *Northern Border Pipeline Co. v. Jackson County*, 512 F. Supp. 1261, 1263 (D.Minn. 1981) (invalidating conditional use permit condition that pipeline must be buried six feet underground, as preempted by PSA).

As explained in *Algonquin*, "[b]ecause of the strong federal interest in establishing a uniform system of regulation designed to implement a national policy of ensuring an adequate supply of natural gas at reasonable prices; and, because the federal regulatory scheme comprehensively regulates the location, construction and modification of natural gas facilities, there is no room for local zoning or building code regulations on the same subjects." *Algonquin*, 79 F. Supp. 2d at 52. In other words, "Congress clearly has manifested an intent to occupy the field and has preempted local zoning ordinances and building codes to the extent that they purport to regulate matters addressed by federal law." *Id.*

---

to explain its development of an Emergency Action Plan for the Stallworth Station and its duties in the event of an emergency. *See* Verified Complaint, Ex. 1, pp. 3-4.

{B3564529.1} 17

### B. The MVP Certificate Preempts the Fayette County Zoning Ordinance Under the Principle of Conflict Preemption.

The Zoning Ordinance is also conflict preempted as it relates to the MVP Project. As stated in the MVP Certificate, FERC has already determined that the MVP Project meets all of the requirements for approval under the NGA, including those relating to siting and construction of the Stallworth Station. MVP Certificate, ¶¶ 7, 64, 308. Indeed, FERC has also issued a Notice to Proceed, finding that MVP has satisfied all applicable conditions set forth in the MVP Certificate and authorizing MVP to proceed with construction of the Stallworth Station immediately. Motion, Exhibit 3.

The issuance of the Rezoning Denial, however, would have the effective of blocking MVP from acting on FERC's Notice to Proceed, so that construction of the Stallworth Station as expressly permitted by FERC under the NGA would be a violation of the Fayette County Zoning Ordinance. Accordingly, federal and local law conflict as to whether MVP should be allowed to proceed with the construction and operation of the Stallworth Station.

Although MVP has satisfied all NGA and PSA requirements, the proposed construction of the Stallworth Station does not satisfy the requirements of the Zoning Ordinance. Moreover, unless the Zoning Denial can be set aside under state law – which would be unlikely, given controlling jurisprudence[21] -- the Stallworth Station can *never* satisfy this local ordinance.

Subjecting the Stallworth Station to regulation under the Zoning Ordinance in these circumstances would therefore be tantamount to conferring on the Fayette County Commission the power to review and nullify FERC's decision regarding the construction and operation of a facility used in the interstate transportation and sale of natural gas. As in *Algonquin*, "[t]he

---

[21] See, e.g., *Prete v. City of Morgantown*, 456 S.E.2d 498, 500 (W.Va. 1995) (applying the legislative "fairly debatable" standard to rezoning denial appeal).

inevitable result would be to delay or prevent completion of the project, thereby presenting an obstacle to accomplishing the important federal purpose of ensuring that adequate and affordable natural gas is provided to home owners and businesses." *Algonquin*, 79 F. Supp. 2d at 52. Accordingly, the Zoning Ordinance is conflict preempted by both the NGA and the PSA.

V. **CONCLUSION.**

Based upon the legal authority discussed above, MVP moves the Court pursuant to Rules 56 and 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 for entry of an order finding and declaring that the Fayette County Zoning Ordinance (Unified Development Code), insofar as it would otherwise apply to the Stallworth Station, is preempted by issuance of the MVP Certificate. MVP also requests entry of a permanent injunction, enjoining the Fayette County Commission from seeking to enforce the Fayette County Zoning Ordinance in connection with MVP's design, construction, or operation of the Stallworth Compressor Station.

Respectfully submitted,

MOUNTAIN VALLEY PIPELINE, LLC
By Counsel

*/s/ Timothy M. Miller*
Timothy M. Miller (W. Va. Bar No. 2564)
Christopher B. Power (W. Va. Bar No. 4286)
Jennifer J. Hicks (W. Va. Bar No. 11423)
Babst Calland Clements and Zomnir, P.C.
BB&T Square
300 Summers Street, Suite 1000
Charleston, WV 25301
Phone: (681) 205-8888
Fax: (681) 205-8814
tmiller@babstcalland.com
cpower@babstcalland.com
jhicks@babstcalland.com