IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**MOUNTAIN VALLEY PIPELINE, LLC,**

    **Plaintiff,**

v.

CIVIL ACTION NO.: 2:17-cv-04377
HONORABLE JOHN T.
COPENHAVER

**MATTHEW D. WENDER, in his official capacity as President of the County Commission of Fayette County, West Virginia; DENISE A. SCALPH, in her capacity as a Commissioner of the County Commission of Fayette County, West Virginia; JOHN G. BRENEMEN, in his capacity as a Commissioner of the County Commission of Fayette County, West Virginia ,**

    **Defendants.**

### DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**NOW COME** the Defendants, Matthew D. Wender, Denise A. Scalph, and John G. Brenemen, in their official capacities as Fayette County Commissioners, by counsel, Wendy E. Greve, Drannon L. Adkins, and the law firm of Pullin, Fowler, Flanagan, Brown & Poe, PLLC, and for their sur-reply to Plaintiff's Motion for Summary Judgment state as follows:

Plaintiff's reply to Defendants' Response to its motion for summary judgment does not cure the deficiencies noted in Defendants' Response to Plaintiff's Motion for Summary Judgment. ECF No. 22. Plaintiff's Reply Brief injects new and skewed "facts" about the representations it made to the Defendants regarding emergency

preparedness and its selection of the Stallworth location.

## A Non-Final FERC Order Should Not Support a Judgment that the Zoning Ordinance is Preempted

Defendants do not seek review of the FERC Certificate as asserted by the Plaintiff. They acknowledge that this Court does not have jurisdiction to consider such a request. Rather, the Defendants assert that the Plaintiff's motion for summary judgment is premature as the Certificate is non-final.

Plaintiff's motion for summary judgment is premised solely on the issuance of the Certificate, which forms the cornerstone for its arguments for preemption. However, as noted by the Tenth Circuit, "[i]t is a requirement that the order have some substantial effect on the parties which cannot be altered by subsequent administrative action." Pub. Serv. Co. of New Mexico v. Fed. Power Comm'n, 557 F.2d 227, 233 (10th Cir. 1977). However, if the Certificate can be "altered by subsequent administrative action" it should not form the basis of an argument of preemption. The same would be true if the courts of appeal reverse the FERC Certificate.

The issuance of the tolling order renders the Certificate non-final while FERC considers applications for rehearings. ECF No. 22, at pp. 5-8. Despite the fact that the Certificate is considered non-final and subject to rescission or reversal by FERC, FERC's practice is to enter tolling orders while permitting the applicants to continue to engage in construction only to later deny the applications after construction is nearly or fully complete. If a party seeking rehearing files a petition for review with the requisite court of appeals, FERC then moves to dismiss as the certificate is non-final, which precludes appellate jurisdiction, and which ultimately denies the due process rights of aggrieved persons. In Logan v. Zimmerman Brush Co., 455 U.S. 422, 102 S. Ct. 1148

(1982), the Supreme Court noted that the

> Due Process Clause has been interpreted as preventing the [government] from denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed right[s].

Id. at 429–30, 102 S. Ct. 1148 (internal citations and quotations omitted). By blocking judicial review while empowering Plaintiff to continue construction, FERC's tolling order practice undermines the courts' role as an arbiter of agency actions.

In sum, until the finality of the FERC Certificate is definitely determined, it should not be considered as a basis for finding that the Zoning Ordinance is preempted.

## Plaintiff has Not Shown Immediate Harm

Plaintiff has not established the sufficient immediacy necessary for this Court to enter a judgment declaring the Fayette County Zoning Ordinance preempted under the Natural Gas Act.

The Plaintiff has self-imposed a construction deadline for December 2018. Plaintiff offers no substantive response as to why this self-imposed deadline establishes "sufficient immediacy and reality to warrant issuance of a declaratory judgment." Volvo Construction North America, Inc. v. CLM Equipment Company, Inc., 386 F.3d 581, 592 (4th Cir. 2004). In its Reply Brief, Plaintiff asserts that the in-service deadline was self-imposed to the extent Plaintiff decided to undertake the process of constructing the pipeline. ECF No. 27, at pp. 12.

The December 2018 in-service date was not imposed by FERC. Rather, it was arbitrarily selected by Plaintiff for reasons known only to it and its affiliates. Plaintiff could have attempted to seek to have the rezoning application heard in the nearly two

3

(2) years after it purchased the property. ECF No. 22-3, at pp. 24-25 (noting that MVP purchased the property in late 2015 or early 2016 and that it was aware of the zoning ordinance at that time). In other words, Plaintiff has manufactured its claimed harm by setting this deadline.

Plaintiff also argues that it faces the "prospect of delayed revenue," as well as the inability to recover construction delay costs, as the basis for its claim that it will suffer irreparable injury. ECF No. 27 at pp. 23. Plaintiff, however, has failed to show that it has sustained "actual and imminent" irreparable harm as opposed to "remote or speculative[.]" Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir.1992) (citations omitted).

First, Plaintiff flatly ignores that its speculative "prospect of delayed revenue" comes from the owners of the project itself.[1] Plaintiff does not claim that it will lose profits from local distributors; rather, it merely claims that it will not receive speculative revenue from its corporate owners. At the very least, there is a factual dispute on whether this lost revenue is actual and imminent or the methodology for arriving at such a conclusion.

Second, the precedent agreements between Plaintiff and its affiliated owners, undercuts Plaintiff's claims of irreparable harm as the agreements provide that Plaintiff's obligations to provide natural gas are not triggered until Plaintiff has received all "permits, licenses, authorizations, rights-of-way, ... and land use or zoning permits

---

[1] MVP is owned by five (5) companies: (1) MVP Holdco, LLC, a subsidiary of EQT Corporation; (2) US Marcellus Gas Infrastructure, LLC, a subsidiary of NextEra Energy Capital Holdings, Inc.; (3) WGL Midstream, Inc., a subsidiary of WGL Holdings, Inc.; (4) RGC Midstream, LLC, a subsidiary of RGC Resources, Inc.; and (5) Con Edison Gas Midstream, LLC, a subsidiary of Consolidated Edison, Inc. MVP Certificate, 161 FERC P 61043 at pp.2, n. 4. The precedent agreements are with its owners and affiliates. Id. at pp. 5-6.

4

necessary for the construction and operation of the Project" by May 1, 2018. See, Precedent Agreement, attached hereto as **Exhibit 1**, at Section 7(a)(ii).

If Plaintiff does not meet its obligations, Plaintiff has the "right to provide written notice to Shipper of its intention to terminate this Precedent Agreement, the Service Agreement, and the Credit Agreement, as applicable[.]" Id. at Section 7(b). Nor is Plaintiff liable to the shippers for failing to meet its construction deadlines. Id. at Section 7(c). While the precedent agreements set an anticipated service date of November 1, 2018, the parties agreed that the Service Commencement date would be no later than June 1, 2020. Id. at Section 9(a). Similarly, the obligation of the shippers (whom are owners of the Plaintiff) to provide payments is not triggered until the Service Commencement Date. Id. at Section 10(b).

In addition, the precedent agreement expressly provides for a suspension of the obligation of each party under a *force majeure* clause. Id. at Section 14. Under the *force majeure* clause, Plaintiff's obligations are suspended for the duration in which the Plaintiff is unable to perform such obligations. Id. at Section 14(a). The parties defined *force majeure* to include"

> any act, event or circumstance, or any combination thereof, that is beyond the reasonable control of [Plaintiff] and which event or circumstance, or any combination thereof, has not been caused by or contributed to by the acts or omission of the [Plaintiff]. The term "force majure" shall include, but shall not be limited to … any laws, orders, rules, regulations, acts or restraints by any government or governmental body or authority, failure or delay by any governmental body or authority to timely provide requested certificates, permits or approval necessary for completion of projects….

Id. at Section 14(b). Plaintiff's precedent agreements require Plaintiff to obtain all permits, including zoning permits, and allow Plaintiff to delay its obligations until such

5

permits are obtained.

Thus, these "harms" are purely self-inflicted and should not tip the balance of equities in favor of Plaintiff. Plaintiff voluntarily chose to impose a deadline (which is not mandated by either the FERC Certificate or its precedent agreements) and apparently chose to engage contractors to begin construction activities with full knowledge that its Certificate was being challenged. Of course, while FERC's practice of permitting construction while its certificates are subject to various challenges likely informed these decisions, Plaintiff "jumped the gun … by entering into contractual obligations that anticipated a pro forma result." Davis v. Mineta, 302 F.3d 1104, 1116 (10th Cir. 2002). In short, Plaintiff should not benefit from its self-imposed "harms."

Additionally, Plaintiff's contention that it fears enforcement of the penalty portions of the zoning ordinance flies in the face of its actions as it has already begun tree-clearing and construction work at the Stallworth location despite the fact that this Court has yet to rule on whether the zoning ordinance is preempted by the NGA. In fact, Plaintiff commenced tree clearing within the same week it filed its Motion for Summary Judgment, while representing to this Court that it feared application of the penalty provisions of the zoning ordinances. ECF No. 16, at pp. 13; *Weekly Status Reports*, attached hereto as **Exhibit 2**. Moreover, Plaintiff compounded this misdirection with the filing of its reply memorandum, where it again claims that it fears imposition of penalties under the zoning ordinance. ECF No. 27 at pp. 20, 22. However, by the time its reply brief was filed, Plaintiff had been engaged in work at the site for nearly an entire month. If Plaintiff was truly worried that it would be subject to the penalties under the zoning ordinance, then it would not have commenced work at the site until this Court

6

issued a ruling. Thus, Plaintiff's claim that the zoning ordinance would be used to unreasonably delay or prohibit implementation of the FERC Certificate falls under Plaintiff's actions.

## The Balance of Equities and Public Interest Factors Tip in Favor of the Defendants

Plaintiff also argues that the public interest factor is evidenced by the FERC Certificate itself. ECF No. 27, at pp 6-7. To support its argument, Plaintiff claims that 4,500 jobs are expected to be created and that more than 50 permanent employees will be hired to support the pipeline. Id. at pp. 7. It also claims that the public will benefit from the influx of money spent to construct the pipeline. Id. at pp. 6-7.

First, as noted above, the FERC Certificate is subject to various challenges and could be reversed by either of the courts of appeal hearing such actions. Because of the non-final nature of the Certificate, it should not form a basis for either preemption or a finding of harm. Second, Plaintiff ignores one of the major points raised by Defendants that it cannot identify even one person in this State that will receive any of the gas extracted from under the soil. During the meetings with the Defendants, Plaintiff noted that no jobs were guaranteed to Fayette County residents ECF No. 22-3, at pp. 16-17) and that no local gas distributors were subscribed to project (ECF No. 22-3, at pp. 51-52). While the influx of construction money may be beneficial to the State temporarily, the only interest that it actually being served by this project is in lining the coffers of the Plaintiff.

Moreover, while Plaintiff began the FERC process in October 2014 and filed its application a year later, Plaintiff waited until the FERC process was nearly complete before it sought to have the property rezoned. Plaintiff has never explained why it

7

waited nearly two years the seek rezoning of the subject property from its date of purchase when it knew that the property was subject to county-wide zoning. ECF No. 22-3, at pp. 24-25. Even when it did seek rezoning, Plaintiff inundated the Defendants will voluminous amounts of information. Id. at pp. 25-26. It appears, however, that Plaintiff purposefully decided to wait until the last minute to seek rezoning knowing that such a process takes time.

In addition, Plaintiff' frames the Defendants arguments regarding emergency preparedness as being about an Emergency Response Plan. ECF No. 27 at pp. 4-5 The Defendants are not concerned with whether or not the Plaintiff has a site-specific emergency response plan in place. Rather, the Defendants were worried about its own preparedness in the event of an accident at the site. Due to the location of the Stallworth Station, Fayette County emergency responders will have to travel outside of their own jurisdiction in order to respond to the site. ECF No. 22-4, at pp. 101. More importantly, none of the fire departments closest to the site are equipped to handle an emergency event at the Stallworth Station. Id. at pp. 104, 105-106. Plaintiff was silent as to the County's concerns about preparedness. Plaintiff is not responsible for ensuring that there are adequate resources available in the event of incident at the site; that burden falls on the local governmental body. These services, of course, cost money and will be borne by the citizens of Fayette County.

The lack of information related to emergency preparedness was also concerning due to the fact that the Stallworth Station is to be unmanned. Plaintiff now claims that there will be an employee at the station on a daily basis. ECF No. 27 at pp. 5. Contrary to Plaintiff's assertions in its Reply Brief, Plaintiff plainly informed the Defendants that

8

"will somebody work there on a daily basis, I can't tell you that." ECF No. 22-4, at pp. 101. The lackluster responses to questioning about County preparedness further evidence the fact that the County needed ample time to digest this information and make the necessary preparations. Instead, the County was given merely one (1) month to consider the impact that this station would have on the County's resources.

Further, Plaintiff contends that there is no factual basis for Defendants' argument that cost was the motivating factor in selecting the Fayette County site. ECF No. 27 at pp. 5. First, any documents that would shed light on this information were filed as "privileged" before FERC and cannot be accessed. Second, the main reason that the Stallworth location was selected as opposed to the alternative sites in Greenbrier County is clearly influenced by the costs. Plaintiff contends that the Fayette County location is superior "in terms of topography (it will require significantly less cut and fill), site access, … and overall environmental consideration (e.g., it will not entail diversion of streams)." Id. at pp. 6.

These contentions, however, underscore the Defendants' arguments. If the alternative site requires more cut and fill, then Plaintiff will have to expend more money to meet the guidelines established by FERC. If the alternative sites had poorer site access, Plaintiff would have to expend more money to build the necessary infrastructure to reach the site. If the alternative site posed greater environmental challenges, such as diverting more streams, then Plaintiff will have to expend additional money to comply with environmental standards. Because the alternative sites would require more work in order to meet the standards established in the Certificate, Plaintiff selected a site that would require less work, which translates into investing fewer funds in building the site.

9

In sum, the public interest factors weigh against enjoining the Fayette County Zoning Ordinance at this time.

### FERC Did not Consider Local Zoning Regulations

Finally, the record before FERC appears to be completely devoid of any consideration of local zoning issues. As noted by the Second Circuit, "where matters sought to be regulated by the [local government] were ... directly considered by the FERC ... such direct consideration is more than enough to preempt state regulation." Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n of State of N.Y., 894 F.2d 571, 579 (2d Cir.1990) (*citing* Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 108 S.Ct. 1145 (1988)). However, the Certificate is wholly silent on whether FERC considered zoning issues. There is minimal discussion of "land use" in the Certificate, but that section discusses agricultural, forestry and recreational use issues rather than providing any findings as to local zoning laws. *See* MVP Certificate, 161 FERC P 61043, at pp.79-82. Because it appears that FERC did not consider any local zoning regulations in connection with the approval of the project, the FERC Certificate does not preempt local zoning regulations. Thus, at the very least, there are issues of material fact that are sufficient to withstand Plaintiff's motion for summary judgment and which permit the parties to engage in discovery in order to pare down such issues.

**WHEREFORE**, for the foregoing reasons, Matthew D. Wender, Denise A. Scalph, and John G. Brenemen, in their official capacities as Fayette County Commissioners, respectfully requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment, and for any and all other such further relief, including costs and attorneys' fees, whether legal or equitable in character, to which they may be entitled.

        Matthew D. Wender, Denise A. Scalph and
        John G. Brenemen in their official capacities
        as Fayette County Commissioners,

        **By Counsel,**

        /s/ Wendy E. Greve, Esq.
        Wendy E. Greve, WV State Bar No. 6599
        Drannon L. Adkins, WV State Bar No. 11384

***PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC***
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545
wgreve@pffwv.com
dadkins@pffwv.com

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**MOUNTAIN VALLEY PIPELINE, LLC,**

    **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　CIVIL ACTION NO.: 2:17-cv-04377
　　　　　　　　　　　　　　　　　　　　　HONORABLE JOHN T.
　　　　　　　　　　　　　　　　　　　　　COPENHAVER

**MATTHEW D. WENDER, in his official capacity as President of the County Commission of Fayette County, West Virginia; DENISE A. SCALPH, in her capacity as a Commissioner of the County Commission of Fayette County, West Virginia; JOHN G. BRENEMEN, in his capacity as a Commissioner of the County Commission of Fayette County, West Virginia ,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of March, 2018 I electronically filed the foregoing ***DEFENDANTS' SUR-REPLY TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*** with the Clerk of the Court using the CM/ECF system which will send notification of such filing.

                      Timothy M. Miller, Esq.
                      Christopher B. Power, Esq.
                      Jennifer J. Hicks, Esq.
            Babst Calland Clements and Zomnir, P.C.
              300 Summers Street, Suite 1000
                        BB&T Square
                      Charleston, WV  25301
                      *Counsel for Plaintiff*

/s/ Wendy E. Greve
Wendy E. Greve, WV State Bar No. 6599
Drannon L. Adkins, WV State Bar No. 11384

**PULLIN, FOWLER, FLANAGAN, BROWN & POE, PLLC**
JamesMark Building
901 Quarrier Street
Charleston, WV 25301
Telephone: (304) 344-0100
Facsimile: (304) 342-1545

13