UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MOUNTAIN VALLEY PIPELINE, LLC,

      Plaintiff,

v.                                Civil Action No. 2:17-cv-04377

MATTHEW D. WENDER, in his
official capacity as President
of the County Commission of
Fayette County, West Virginia;
DENISE A. SCALPH, in her
official capacity as a
Commissioner of the County
Commission of Fayette County,
West Virginia; and JOHN G.
BRENEMEN, in his official
capacity as a Commissioner of
the County Commission of
Fayette County, West Virginia,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is plaintiff Mountain Valley Pipeline, LLC's ("Mountain Valley") motion for summary judgment, filed February 5, 2018.

I. Background

      The material facts of this case are undisputed and relatively simple.  Mountain Valley is a natural gas company within the meaning of the Natural Gas Act ("NGA" or the "Act"),

15 U.S.C. §§ 717 <u>et</u> <u>seq.</u>[1]  Consequently, it is subject to the
jurisdiction of the Federal Energy Regulatory Commission
("FERC").  <u>Schneidewind v. ANR Pipeline Co.</u>, 485 U.S. 293, 295
(1988).  Defendants Matthew D. Wender, Denise A. Scalph, and
John G. Brenemen comprise the County Commission in Fayette
County, West Virginia (the "Commissioners").  (<u>See</u> Verified
Compl. ¶ 12.)

On October 13, 2017, Mountain Valley received from
FERC a certificate of public convenience and necessity (the
"certificate"), authorizing the construction of a 303.5-mile
long natural gas pipeline of 42-inches in diameter stretching
from Wetzel County, West Virginia, to Pittsylvania County,
Virginia.  <u>See</u> <u>Mountain Valley Pipeline, LLC, Equitrans, L.P.</u>
<u>("Certificate")</u>, 161 FERC P 61,043, at ¶¶ 7, 310(A) (Oct. 13,
2017).  The certificate is conditioned on, <u>inter</u> <u>alia</u>, Mountain
Valley completing the pipeline and placing it in service within
three years from the certificate's issuance.  <u>Id.</u> ¶ 310(C)(1).
Additionally, the certificate instructs the following:

> Any state or local permits issued with respect to the
> jurisdictional facilities authorized herein must be
> consistent with the conditions of this certificate.
> We encourage cooperation between interstate pipelines

---

[1] A "[n]atural-gas company" is "a person engaged in the
transportation of natural gas in interstate commerce, or the
sale in interstate commerce of such gas for resale," while a
"person" can be either "an individual or a corporation."  15
U.S.C.S. §§ 717a(1) and (6) (LexisNexis 2018).

and local authorities.  However, this does not mean
that state and local agencies, through application of
state or local laws, may prohibit or unreasonably
delay the construction or operation of facilities
approved by this Commission.

Id. ¶ 309 (citing, inter alia, Schneidewind, 485 U.S. at 310,

and Dominion Transmission, Inc. v. Summers, 723 F.3d 238, 245

(D.C. Cir. 2013)).  On June 15, 2018, FERC denied requests for

rehearing on the issuance of the certificate.  See Mountain

Valley Pipeline, LLC, Equitrans, L.P., 163 FERC P 61,197, at ¶ 5

(June 15, 2018).

Pertinent here, Mountain Valley's certificate

authorizes construction of the Stallworth Compressor Station

(the "Stallworth Station") on property in Fayette County owned

by Mountain Valley (the "Stallworth Property").  (Verified

Compl. ¶ 24.)  The Stallworth Property is comprised of three

tracts of land totaling about 131 acres.  (Declaration of Robert

J. Cooper ("Cooper Decl.") ¶¶ 5, 7.)  The construction and

operation of the Stallworth Station will impact a limited number

of those acres, with around thirty acres needed for construction

that reduces to around seven acres for operation.  (Id. ¶ 7.)

On January 29, 2018, FERC granted Mountain Valley permission to

proceed with construction of the Stallworth Station.  (Comm'rs

Resp. Ex. 2.)

The Stallworth Property is currently designated a "R-R Rural-Residential" zone under the Fayette County Unified Development Code (the "UDC" or the "Fayette Zoning Code").  See UDC § 2001.4; (Verified Compl. ¶ 55).[2]  To situate the Stallworth Station there in compliance with the Fayette Zoning Code, the Stallworth Property must be re-zoned a "H-1 Heavy Industrial" zone.  See UDC § 4002; (Verified Compl. ¶ 56).  Then, before beginning construction, Mountain Valley must obtain an "improvement location permit," UDC § 1006, Part II, and a state building permit, id. § 5001.  (Verified Compl. ¶¶ 52-54.)  On August 2, 2017, Mountain Valley applied to re-zone the Stallworth Property.  (Verified Compl. ¶ 57.)  The Commissioners ultimately denied that request on November 17, 2017.  (Id. ¶ 68.)  Robert J. Cooper, "the Senior Vice President of Engineering and Construction at Mountain Valley," declares that Mountain Valley will suffer irreparable economic and non-economic harms resulting from delayed construction, such as lost revenue, modifications to Mountain Valley's construction schedule, and a diminished reputation.  (See Cooper Decl. ¶¶ 1, 12-21.)

---

[2] The UDC is available at http://fayettecounty.wv.gov/zoning/Pages/default.aspx.

Mountain Valley initiated this action the same day the Commissioners denied its re-zoning application, invoking the court's federal question jurisdiction under 28 U.S.C. § 1331. (Verified Compl. ¶ 9.)  Mountain Valley requests declaratory judgment that the NGA preempts the Fayette Zoning Code insofar as it applies to the property deemed by FERC to be necessary in the siting, construction, and operation of the Stallworth Station.  (Id. ¶¶ 8, 78-86.)[3]  Additionally, Mountain Valley seeks to permanently enjoin the defendants from "attempting to enforce or rely on the Fayette [Zoning Code] to interfere with or prevent [Mountain Valley's] construction of the Stallworth Station."  (Id. ¶ 8, 87-92.)

## II. Governing Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In reviewing a motion for summary

---

[3] Mountain Valley also seeks declaratory judgment that the Fayette Zoning Code is preempted by the Pipeline Safety Act, 49 U.S.C. §§ 60101 et seq.  (Id. ¶ 8.)  In its reply, however, Mountain Valley stated that "because NGA preemption is enough to support the relief that [Mountain Valley] seeks in this action, the Court need not issue a ruling on the preemptive effects of the [Pipeline Safety Act] in this proceeding."  (Mountain Valley Reply 14 n.22.)

judgment, the court is guided by the principle that it must "construe the evidence, and all reasonable inferences that may be drawn from such evidence, in the light most favorable to the nonmoving party." Dash v. Mayweather, 731 F.3d 303, 310 (4th Cir. 2013) (citing PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011)).

"As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Regarding genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also S.B. v. Bd. of Educ., 819 F.3d 69, 74 (4th Cir. 2016) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). The moving party must first "'show[]' - that is, point[] out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If the movant carries its burden, the non-movant must demonstrate that "there is sufficient evidence favoring [it] for

a jury to return a verdict" in its favor.  Anderson, 477 U.S. at

249 (citation omitted); see also Dash, 731 F.3d at 311.  As

explained by our circuit court of appeals,

> [a]lthough the court must draw all justifiable
> inferences in favor of the nonmoving party, the
> nonmoving party must rely on more than conclusory
> allegations, mere speculation, the building of one
> inference upon another, or the mere existence of a
> scintilla of evidence.  See Anderson, 477 U.S. at 252;
> Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 191 (4th
> Cir. 1997).  Rather, "a party opposing a properly
> supported motion for summary judgment . . . must 'set
> forth specific facts showing that there is a genuine
> issue for trial.'"  Bouchat v. Balt. Ravens Football
> Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting
> Fed. R. Civ. P. 56(e) (2002) (amended 2010)).

Dash, 731 F.3d at 311 (alteration in original).


## III. Discussion


The Commissioners argue at the outset that Mountain

Valley's motion for summary judgment "should be denied as

premature because FERC is considering rehearing requests, and

because there are multiple legal challenges to the FERC

Certificate, any of which may invalidate the Certificate."

(Comm'rs Resp. 6; Comm'rs Sur-reply 2-3.)  On the contrary, this

court recently recognized in Mountain Valley's related

condemnation action that "a FERC order remains in effect unless

FERC or a court of appeals issues a stay, see 15 U.S.C. §

717r(c), and no such stay has been issued here."  Mountain

<u>Valley Pipeline, LLC v. An Easement to Construct, Operate &
Maintain a 42-Inch Gas Transmission Line</u>, No. 2:17-cv-04214,
2018 U.S. Dist. LEXIS 28755, at *20 (S.D. W. Va. Feb. 21, 2018).[4]
Furthermore, as earlier noted, FERC denied the rehearing
requests on June 15, 2018, after the close of briefing on the
pending motion in this case.  Thus, the Commissioners' initial
arguments are without merit, and the court turns to Mountain
Valley's requests for declaratory judgment and injunctive
relief.

-----

[4] On July 27, 2018, the Fourth Circuit vacated the decisions of
the Bureau of Land Management and the Forest Service authorizing
construction of Mountain Valley's project through federal lands
and remanded to those agencies to address the issues identified
in the appellate court's decision.  <u>See</u> <u>Sierra Club, Inc. v.
U.S. Forest Serv.</u>, 897 F.3d 582 (4th Cir. 2018).  On August 3,
2018, in response to the Fourth Circuit's decision, FERC
notified Mountain Valley that it must cease all construction
activities except necessary measures to stabilize rights of way
and workspaces; later, on August 15, 2018, FERC permitted
Mountain Valley to resume construction on the first seventy-
seven miles of the project.  <u>See</u> August 3 Notification of Stop
Work Order, https://www.documentcloud.org/documents/ 4637748-
FERC-MVP-Stop-Work-Order-August-2018.html; August 15 Stop Work
Order Modification, https://www.documentcloud.org/documents
/4775717-MVP-FERC-Stop-Work-Order-Modification.html.
Importantly, FERC's stop work order does not operate to stay
Mountain Valley's certificate, and FERC noted that "[t]here is
no reason to believe that the [federal agencies] will not be
able to comply with the [Fourth Circuit's] instructions."
August 3 Notification of Stop Work Order.

A. Declaratory Judgment - Actual Controversy

     The Commissioners contend that there is no "actual
controversy" from which the court may enter a declaratory
judgment.  (See Comm'rs Resp. 10-11.)  The Declaratory Judgment
Act requires, among other things, that an "actual controversy"
exist prior to the entry of declaratory relief.  See 28 U.S.C.S.
§ 2201(a).  Since "the operation of the Declaratory Judgment Act
is procedural only," the "actual controversy" to which the
Declaratory Judgment Act refers is Article III's cases-and-
controversies standing requirement.  See Aetna Life Ins. Co. v.
Haworth, 300 U.S. 227, 240 (1937); see also MedImmune, Inc. v.
Genentech, Inc., 549 U.S. 118, 126-27 (2007) ("[T]he phrase
'case of actual controversy' in the [Declaratory Judgment] Act
refers to the type of 'Cases' and 'Controversies' that are
justiciable under Article III.").  In the context of declaratory
judgment, an actual controversy has been defined as one "of
sufficient immediacy and reality to warrant the issuance of"
declaratory relief.  Md. Cas. Co. v. Pac. Coal & Oil Co., 312
U.S. 270, 273 (1941) (citing Aetna Life Ins., 300 U.S. at 239-
42); see also Am. Whitewater v. Tidwell, 770 F.3d 1108, 1119
(4th Cir. 2014).

     The immediacy and reality of the controversy here is
clear.  Mountain Valley's certificate, issued by FERC,

9

authorizes the construction of the Stallworth Station on the Stallworth Property.  Mountain Valley has also applied to re-zone the Stallworth Property to the appropriate designation that allows for the targeted construction and use.  The Commissioners denied that application.  Mountain Valley now challenges the constitutionality of the Fayette Zoning Code on preemption grounds insofar as it applies to the Stallworth Station. These facts alone are enough to establish a sufficiently immediate and real controversy to warrant consideration of declaratory relief.  See Steel Hill Dev., Inc. v. Sanbornton, 335 F. Supp. 947, 951 (D.N.H. 1971) (finding an actual controversy where a plaintiff "submitted a subdivision plan for approval" but "the zoning amendments prohibit him from subdividing and selling substantial portions of his property"); 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 (4th ed.) ("There is little difficulty in finding an actual controversy if all of the acts that are alleged to create liability already have occurred."); cf. EQT Prod. Co. v. Wender, 191 F. Supp. 3d 583, 593-94 (S.D. W. Va. 2016) (finding that a plaintiff had standing to challenge a county ordinance that only "uncertain[ly]" impacted the plaintiff's operations).

10

Mountain Valley also indicates that it has refrained from building the Stallworth Station because of a threat of enforcement pursuant to the Fayette Zoning Code. (See Verified Compl. ¶ 73.)  The Commissioners point out that Mountain Valley's refrainment is belied by the evidence showing that it has already begun construction activities. (See Comm'rs Sur-reply Ex. 2.)  Mountain Valley replies that its activities to-date do not constitute "construction activities . . . that are prohibited by the" Fayette Zoning Code. (Mountain Valley Sur-resp. 6 (emphasis omitted).)

Regardless, the Commissioners in their answer acknowledge "that if Plaintiff violates the law [then] legal recourse will ensue." (Answer ¶ 73.)  And the Fayette Zoning Code allows for such recourse through "[a]ppropriate actions and proceedings," such as civil penalties, abatement, correction of the violation, and referral to the county prosecutor for criminal prosecution. See UDC §§ 1003.VII.[5]  As the Supreme Court has explained,

---

[5] The Fayette Zoning Code attempts to incorporate various enforcement provisions from chapter 8, article 24 of the West Virginia Code, which evidently imposed criminal sanctions. See id.  That article of the West Virginia Code has been repealed. Nevertheless, chapter 8A, article 10 of the West Virginia Code now governs enforcement of county and municipal land use planning ordinances, which contemplates both civil and criminal penalties. See W. Va. Code Ann. §§ 8A-10-1 (common nuisance), -2 (misdemeanor), -3 (injunctive relief).

11

> where threatened action by government is concerned, we
> do not require a plaintiff to expose himself to
> liability before bringing suit to challenge the basis
> for the threat - for example, the constitutionality of
> a law threatened to be enforced.  The plaintiff's own
> action (or inaction) in failing to violate the law
> eliminates the imminent threat of prosecution, but
> nonetheless does not eliminate Article III
> jurisdiction.

MedImmune, 549 U.S. at 128-29 (emphasis omitted); see also id.

at 129 (discussing Supreme Court precedent and concluding that

"putting [a plaintiff] to the choice between abandoning his

rights or risking prosecution [] is a dilemma that it was the

very purpose of the Declaratory Judgment Act to ameliorate"

(quotation marks omitted)).

      The Commissioners suggest that Mountain Valley has

"manufactured" the immediacy and reality of its claim through

"self-inflicted" harms, such as a self-imposed in-service

deadline, speculation as to lost revenues, and delay in applying

to re-zone.  (See Comm'rs Sur-reply 3-4.)  The Commissioners

look for support in Mountain Valley's precedent shipping

agreements, which the Commissioners insist show that Mountain

Valley contemplated trouble receiving all necessary permits,

including zoning permits.  (See id. 4-6.)  Whether Mountain

Valley's harms are self-inflicted is immaterial here.  In short,

Mountain Valley has a certificate from FERC authorizing the

construction of the Stallworth Station, and the Commissioners

denied Mountain Valley's application to re-zone the Stallworth
Property to the proper designation.  Moreover, the Fayette
Zoning Code allows for the imposition of civil penalties and the
prosecution of a criminal action for zoning violations.  As
noted, those facts create an actual controversy, and the court
may therefore consider Mountain Valley's request for a
declaratory judgment.

### B. Declaratory Judgment - Preemption

The Supremacy Clause states that federal law is "the
supreme Law of the Land . . . any Thing in the Constitution or
Laws of any State to the Contrary notwithstanding."  U.S. Const.
art. VI, cl. 2.  Consequently, Congress maintains the authority
to preempt state law through federal legislation.  Oneok, Inc.
v. Learjet, Inc., 135 S. Ct. 1591, 1595 (2015).  Whether
Congress has exercised that authority is "guided first and
foremost by the maxim that 'the purpose of Congress is the
ultimate touchstone in every pre-emption case.'"  Epps v. JP
Morgan Chase Bank, N.A., 675 F.3d 315, 322 (4th Cir. 2012)
(quoting Wyeth v. Levine, 555 U.S. 555, 564 (2009)).  Further,
the preemption analysis is built on "the assumption that the
historic police powers of the States [are] not to be superseded
by . . . Federal Act unless that [is] the clear and manifest

purpose of Congress." Cipollone v. Liggett Grp., 505 U.S. 504, 516 (1992) (alterations in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

Congress may explicitly or implicitly preempt state law. Oneok, 135 S. Ct. at 1595; see Wash. Gas Light Co. v. Prince George's Cty. Council, 711 F.3d 412, 419-20 (4th Cir. 2013) (describing the three methods of federal preemption: express preemption, field preemption, and conflict preemption). Only implicit preemption, whether it be field or conflict, is at issue here. Specifically, Mountain Valley argues that the NGA invalidates the Fayette Zoning Code insofar as it applies to the Stallworth Station through field preemption and conflict preemption. (See, e.g., Verified Compl. ¶¶ 80, 82.)

1. Field Preemption

Field preemption arises where "Congress may have intended 'to foreclose any state regulation in the area,' irrespective of whether state law is consistent or inconsistent with 'federal standards.'" Oneok, 135 S. Ct. at 1595 (emphasis omitted) (quoting Arizona v. United States, 567 U.S. 387, 401 (2012)). "Actual conflict between a challenged state enactment and relevant federal law is unnecessary to a finding of field preemption; instead, it is the mere fact of intrusion that

14

offends the Supremacy Clause." PPL EnergyPlus, LLC v. Nazarian, 753 F.3d 467, 474 (4th Cir. 2014) (citing N. Nat. Gas Co. v. State Corp. Comm'n, 372 U.S. 84, 97-98 (1963)).

The preemptive effect of the NGA is well-settled: "The NGA confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." Schneidewind, 485 U.S. at 300-01 (citing N. Nat. Gas Co. v. State Corp. Comm'n, 372 U.S. at 89); see also Wash. Gas Light, 711 F.3d at 423. Nevertheless, "the [NGA] 'was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way.'" Oneok, 135 S. Ct. at 1599 (quoting Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n of Ind., 332 U.S. 507, 517-18 (1947)). In the NGA context, the Supreme Court "emphasize[s] the importance of considering the target at which the state law aims in determining whether that law is pre-empted." Id. (emphasis omitted). The relevant "[s]tatutory text and structure provide the most reliable guideposts in this inquiry." PPL EnergyPlus, 753 F.3d at 474 (citing Medtronic, Inc. v. Lohr, 518 U.S. 470, 486 (1996)).

The Fourth Circuit holds that "the NGA gives FERC jurisdiction over the siting of natural gas facilities, as a natural gas company must obtain a certificate of public

convenience and necessity from FERC before constructing an interstate natural gas facility." Wash. Gas Light, 711 F.3d at 423 (citing 15 U.S.C. § 717f(c)(1)(A) (2006)); see also N. Nat. Gas Co. v. Iowa Utils. Bd., 377 F.3d 817, 821 (8th Cir. 2004); Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n, 894 F.2d 571, 579 (2d Cir. 1990).  Analysis of FERC's implementing regulations is illustrative of our appellate court's conclusion and helpful in comparing the NGA against the Fayette Zoning Code. Pertinently, the NGA's certificate regulations implementing the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq.,[6] address the physical placement of facilities over which FERC has jurisdiction ("jurisdictional facilities").  See 18 C.F.R. § 380.12 (2018).

---

[6] NEPA imposes procedural requirements aimed at "major federal actions that may significantly affect the natural environment." Nat'l Audubon Soc'y v. Dep't of the Navy, 422 F.3d 174, 184 (4th Cir. 2005).  Its purpose is twofold:

> [First, to] ensure that an agency planning a major federal action obtains and considers the necessary information concerning any significant environmental impacts that the action may cause.  Hodges v. Abraham, 300 F.3d 432, 438 (4th Cir. 2002).  [Second, to] guarantee that the public has access to the relevant information about the proposed action so that it can participate in the decisionmaking process.  Id.

Webster v. U.S. Dep't of Agric., 685 F.3d 411, 417 (4th Cir. 2012).  NEPA requires the preparation of an environmental impact statement containing relevant information for such federal actions.  Id.

FERC's NEPA implementing regulations require an applicant to prepare reports containing the following items and information, in broad terms:

A. Maps showing the physical location of jurisdictional facilities and associated land requirements, including "the location of the nearest noise-sensitive areas . . . within 1 mile of [any] compressor station," and descriptions of any "reasonably foreseeable plans for future expansion of facilities," id. § 380.12(c);

B. Descriptions of impacted water use and quality, fish and wildlife, vegetation, cultural resources, geological resources, and soils; how these items will be impacted by the jurisdictional facility; and proposed measures to mitigate and minimize those impacts, id. §§ 380.12(d)-(f), (h)-(i);

C. For projects "involving significant aboveground facilities," an analysis of the socioeconomic impact on "towns and counties in the vicinity of the project," id. § 380.12(g);

D. Descriptions of existing land uses on and within 0.25 miles of the jurisdictional facility, consequential changes to those uses, and proposed mitigation measures, id. § 380.12(j);

E. For compressor stations, the impact "on the existing air quality and noise environment" as well as a "descri[ption of] proposed measures to mitigate th[ose] effects," id. § 380.12(k); and

F. Descriptions and comparisons of alternatives, id. § 380.12(l).

Moreover, FERC instructs applicants to "avoid[] or minimize[] effects on scenic, historic, wildlife, and recreational values." Id. § 380.15(a). When siting an aboveground jurisdictional facility, FERC also mandates that an applicant consider the obtrusiveness of the site and the noise

potential of the facility; design the facility in a manner that occupies minimum land and is in harmony with its surroundings; and enhance the landscape of the facility where it is visible to residential or public areas.  Id. § 380.15(g).  The NEPA reports mandated by FERC must be submitted as an exhibit to a certificate application.  Id. § 157.14(a)(7).

A reading of the foregoing regulations shows that Congress intends for FERC, as part of its "exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale," Schneidewind, 485 U.S. at 300-01, to occupy the field of siting jurisdictional facilities. Wash. Gas Light, 711 F.3d at 423.  Thus, any state or local law that purports to target the field of siting a jurisdictional facility is preempted.

Although it seems uncontroversial that a zoning ordinance would fall in the field occupied by the NGA and FERC, the Supreme Court instructs that the ordinance must nonetheless "target" the preempted field.  Oneok, 135 S. Ct. at 1599.  The express purposes of the Fayette Zoning Code are as follows:

> A. Protect and encourage the health, safety, and general welfare of the present and future population of Fayette County.
>
> B. Guide the future growth and development of Fayette County in accordance with the adopted Comprehensive

Plan.[7]

C. Encourage growth and development in areas where
sewer, water, schools, and other public facilities
are, or will, soon be available in order to provide
services in the most cost-effective manner.

D. Insure that growth and development are both
economically and environmentally sound.

E. Encourage an agricultural base in the County.

F. Encourage an improved appearance of Fayette County
with relationship to the use and development of land
and structures.

G. Encourage the conservation of natural resources.

H. Provide a guide for public action and the orderly
and efficient provision of public facilities and
services.

I. Provide a guide for private enterprise in
developing and building a community with healthy
businesses and tightly knit neighborhoods.

J. Encourage historic preservation.

UDC §§ 1001.II.A to J.  Specifically, the Fayette Zoning Code

regulates the location of "gas . . . transmission lines . . .

---

[7] The "Comprehensive Plan" is "[a] composite of mapped and
written text, the purpose of which is to guide the systematic
physical development of the County and is adopted by the County
Commission."  UDC § 1002.II.  Fayette County adopted its
Comprehensive Plan as "a vehicle through which local government
officials and citizens can express their goals for the future of
their community."  Comprehensive Plan Ch. 1, Part III (Adopted
2001), available at http://fayettecounty.wv.gov/
zoning/Pages/default.aspx.  In other words, the Comprehensive
Plan is a roadmap for the future, providing for the ideal
development of property within Fayette County, and the Fayette
Zoning Code is designed to facilitate that development.

and appurtenances" by requiring that they be located in a zone designated "H-1 Heavy Industrial." Id. § 4002.

Plainly, the Fayette Zoning Code targets the siting of jurisdictional facilities. FERC's NEPA implementing regulations cover most, if not all, of the Fayette Zoning Code's enumerated purposes. Compare 18 C.F.R. §§ 380.12, 380.15 with UDC § 1001.II.A to J. And more importantly, the Fayette Zoning Code explicitly targets the location of jurisdictional facilities through the "H-1 Heavy Industrial" zoning designation. UDC § 4002.

The Commissioners nevertheless insist that the Fayette Zoning Code does not target jurisdictional facilities since it "applies to all property located within Fayette County," (Comm'rs Resp. 14), but that position is belied by the Fayette Zoning Code's explicit language regarding gas transmission lines and appurtenances, UDC § 4002. Even if the Fayette Zoning Code had not explicitly mentioned gas transmission lines and appurtenances, it would nevertheless be preempted because it unquestionably aims at regulating the location of jurisdictional facilities - the field occupied by the NGA and FERC. See Oneok, 135 S. Ct. at 1599-1600.

That the Fayette Zoning Code is preempted by the NGA and FERC is further bolstered "by the imminent possibility of

collision between [the Fayette Zoning Code] and the NGA" and FERC's regulations. <u>Schneidewind</u>, 485 U.S. at 310 (citing <u>N. Nat. Gas Co. v. State Corp. Comm'n</u>, 372 U.S. at 91-93, and <u>Maryland v. Louisiana</u>, 451 U.S. 725, 751 (1981)).  While not dispositive, such a possibility lends support to the preemptive effect of the NGA over the state or local law at issue because the state or local law could impair FERC's ability to comprehensively and uniformly regulate the transportation of natural gas across state lines.  <u>See</u> <u>id.</u>  In fact, the federal and local laws here have already collided.

The Commissioners advance several arguments against Mountain Valley's requested declaratory relief.  They contend that Congress's 2005 amendment to the portion of the NGA addressing "LNG terminals"[8] negates the Act's well-settled preemptive nature.  (<u>See</u> Comm'rs Resp. 13.)  The 2005 amendment granted FERC "exclusive authority to approve or deny an application for the siting, construction, expansion, or

---

[8] A LNG (liquid natural gas) terminal "includes all natural gas facilities located onshore or in State waters that are used to receive, unload, load, store, transport, gasify, liquefy, or process natural gas that is imported to the United States from a foreign country, exported to a foreign country from the United States, or transported in interstate commerce by waterborne vessel."  15 U.S.C.S. § 717a(11).  LNG terminals are further defined not to include "any pipeline or storage facility subject to the jurisdiction of [FERC] under section 7" of the NGA.  <u>Id.</u> § 717a(11)(B).

operation of an LNG terminal." Energy Policy Act of 2005, Pub.
L. No. 109-58, § 311, 119 Stat. 594, 685-86 (2005). The
definition of an "LNG terminal" expressly excludes facilities
that must obtain a certificate of public convenience and
necessity pursuant to section 7 of the NGA, such as the
Stallworth Station. See id. Because Congress did not similarly
grant FERC "exclusive authority" over pipelines and compressor
stations, the Commissioners suggest that Congress intended to
withhold from FERC preemptive authority over pipelines and
compressor stations. (See Comm'rs Resp. 13.)[9]

There are two most prominent reasons why the
Commissioners' argument is unavailing. First, the 2005
amendments to the NGA addressed the specific and limited field
of LNG terminals, which, as earlier defined, are "onshore or in
State waters" facilities used in the importing and exporting of
liquid natural gas. § 311, 119 Stat. at 685-86. Those
amendments did not, however, alter the sections from which FERC

---

[9] Separately, the Commissioners note that a decision upon which
Mountain Valley heavily relies improperly construed the 2005
amendments as applying to such facilities. (Comm'rs Resp. 13-14
(citing Dominion Transmission, Inc. v. Town of Myersville Town
Council, 982 F. Supp. 2d 570, 577 (D. Md. 2013)).) In Town of
Myersville, the plaintiff sought to build a compressor station
within the defendant-town's boundaries as part of a multistate
pipeline project. 982 F. Supp. 2d at 572. The court concluded
that the NGA preempted the town's zoning code, relying on the
2005 amendment to the NGA even though the compressor station at
issue does not appear to be a LNG terminal. See id. 576-79.

receives its preemptive power over the field of transporting and selling natural gas in interstate commerce. Compare id. (amending sections 1, 2, and 3 of the NGA) with Iowa Utils. Bd., 377 F.3d at 821 (stating that section 7 of the NGA "specifically provides that the FERC will oversee the construction and maintenance of natural gas pipelines through the issuance of certificates of public convenience and necessity"). It follows that FERC's field-preemptive authority under section 7 was also unaltered. And second, Congress's grant of "exclusive authority" is an express preemption clause. See AES Sparrows Point LNG, LLC v. Smith, 527 F.3d 120, 125-26 (4th Cir. 2008). So it does not matter that FERC lacks such "exclusive authority" over interstate pipelines and compressor stations - FERC never had it, but retains the benefit of field preemption.

The Commissioners also point out that Mountain Valley has not alleged that the Fayette Zoning Code has "prohibit[ed] or unreasonably delay[ed] construction of the Stallworth Station." (Comm'rs Resp. 14.) This argument invokes the certificate's instruction that certificate holders should attempt to cooperate with state and local permitting authorities. See Certificate ¶ 309. Coined the "rule of reason," FERC directs certificate holders to engage in "bona fide attempts to comply with state and local requirements."

23

*Algonquin Gas Transmission, LLC*, 154 FERC P 61,048, at ¶¶ 34-35
(Jan. 28, 2016).  Importantly, however, FERC believes that the
NGA preempts local zoning ordinances, *e.g.* *id.*, and the rule of
reason is secondary to FERC's mandate that "[a]ny state or local
permits issued with respect to the jurisdictional facilities
authorized [in a certificate] must be consistent with the
conditions of th[e] certificate."  See Certificate ¶ 309.  Thus,
the rule of reason is only tangentially related to the field
preemption inquiry.

Lastly, the Commissioners assert that Mountain Valley
has not stated why it needs to rezone all its property rather
than only the acreage necessary to build the compressor station,
(Comm'rs Resp. 15), and that the certificate does not explicitly
reflect that FERC considered local zoning regulations in
approving Mountain Valley's project, (Comm'r Sur-reply 10).
These arguments are irrelevant to the question of whether the
NGA and FERC preempt the Fayette Zoning Code insofar as it
applies to the Stallworth Station.  Furthermore, Mountain Valley
does not seek a declaration mandating the Commissioners to re-
zone the entire Stallworth Property.  Mountain Valley instead
seeks a declaration applicable only to the Stallworth Station.

Accordingly, the Fayette Zoning Code is preempted
insofar as it applies to Mountain Valley's FERC-approved

24

activities in connection with the Stallworth Station because it
attempts to regulate in a field occupied by the NGA and FERC.
See Algonquin LNG v. Loqa, 79 F. Supp. 2d 49, 52 (D.R.I. 2000)
(concluding that "there is no room for local zoning or building
code regulations on the" subjects of siting and building
jurisdictional facilities because such local regulations target
a field occupied by the NGA and FERC).

### 2. Conflict Preemption

Conflict preemption arises in two scenarios: [1]
"where it is 'impossible for a private party to comply with both
state and federal requirements,' or [2] where state law 'stands
as an obstacle to the accomplishment and execution of the full
purposes and objectives of Congress.'" Freightliner Corp. v.
Myrick, 514 U.S. 280, 287 (1995) (citation omitted) (quoting
English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990), and Hines v.
Davidowitz, 312 U.S. 52, 67 (1941)).  The Fourth Circuit
instructs that

> [a]ssessing a conflict preemption claim requires "a
> two-step process of first ascertaining the
> construction of the two statutes and then determining
> the constitutional question [of] whether they are in
> conflict." Chi. & Nw. Transp. Co. v. Kalo Brick &
> Tile Co., 450 U.S. 311, 317 (1981) (internal quotation
> marks omitted).  In making this determination, a court
> "should not seek out conflicts . . . where none
> clearly exist[]." College Loan Corp. v. SLM Corp.,

396 F.3d 588, 595-96 (4th Cir. 2005) (internal
quotation marks and alteration omitted).

H&R Block E. Enters. v. Raskin, 591 F.3d 718, 723 (4th Cir.
2010) (last alteration added).

The Commissioners' effort to regulate the siting of
jurisdictional facilities has obstructed Congress's purposes in
enacting the NGA and empowering FERC with the Act's
implementation.  FERC considered the myriad factors outlined
above and decided that the public convenience and necessity
required the Stallworth Station be located at the Stallworth
Property.  See Certificate ¶¶ 7, 310(A).  The Commissioners,
considering the Fayette Zoning Code and factors significantly
overlapping with those considered by FERC, disagreed.  (Verified
Compl. ¶ 68.)  Compare 18 C.F.R. §§ 380.12, 380.15 with UDC §§
1001.II.A to J.

In this instance, "the principles of field and
conflict preemption . . . are mutually reinforcing."  PPL
EnergyPlus, 753 F.3d at 478.  The court is cognizant that the
NGA will not preempt every state or local law with an incidental
impact on interstate gas transportation, and that in such a
system of "interlocking jurisdiction" tensions will doubtlessly
arise yet nevertheless coexist within the congressionally-
"assigned sphere[s]."  Id. (quotation marks omitted) (quoting
Nw. Cent. Pipeline Corp. v. State Corp. Comm'n, 489 U.S. at 506,

26

515, 515 n.12); see also Schneidewind, 485 U.S. at 308.  But the
Fayette Zoning Code's attempt to regulate within the field
occupied by the NGA and FERC ran doubly awry of the Supremacy
Clause when the Commissioners denied Mountain Valley's re-zoning
application, at least to the extent the application sought to
re-zone the property necessary for the Stallworth Station.  The
denial interfered with the comprehensive and careful
consideration of FERC in siting the Stallworth Station and
deeming that site in furtherance of the public convenience and
necessity.  Thus, "the impact of [local] regulation . . . on
matters within federal control is so extensive and disruptive of
[siting the Stallworth Station] that preemption is appropriate."
PPL EnergyPlus, 753 F.3d at 478 (quotation marks omitted)
(quoting Nw. Cent. Pipeline, 489 U.S. at 517-18); see also
Algonquin LNG, 79 F. Supp. 2d at 52 (concluding that the NGA and
FERC conflict preempted local zoning regulations of whether a
natural gas company could expand a jurisdictional facility).

        The Commissioners contend that "[Mountain Valley] can
clearly comply with both the NGA and the UDC by receiving
rezoning approval for the Stallworth location or by having a
denial overturned."  (Comm'rs Resp. 17-18.)  Thus, they suggest
that compliance with both the certificate and the Fayette Zoning
Code is not impossible.  (See id. 16-18.)  For example, the

27

Commissioners note that Mountain Valley could have appealed the decision to deny its re-zoning application since there is no outright ban on re-zoning a parcel from R-R Rural Residential to H-1 Heavy Industrial.  (See id.)

Impossibility of compliance with both federal and local regulation is not, however, the only measure of conflict preemption.  As explained above, the Commissioners' denial of Mountain Valley's re-zoning application pursuant to the Fayette Zoning Code impedes Congress's objectives in enacting the NGA and charging FERC with its implementation.

The Commissioners also invoke FERC's rule of reason described above, suggesting that pursuit of approval of the re-zoning application is within reason since FERC granted Mountain Valley three years to place the project into service; alternatively, the Commissioners insist that there is a genuine factual dispute as to whether the Fayette Zoning Code unreasonably delays construction of the Stallworth Station. (See Comm'rs Resp. 18.)  Additionally, the Commissioners insist that the Stallworth Property "is merely [Mountain Valley's] preferred location," noting that Mountain Valley considered alternate locations for its compressor station.  (Id. (emphasis omitted).)

Again, the rule of reason is more suggestion than mandate, and it is nevertheless only tangentially related to preemption.  Furthermore, the three-year deadline is merely the outer limit on placing the project into service, while economic and pragmatic planning considerations compel completion as soon as practicable and any unnecessary impediments will be at Mountain Valley's unrecoverable expense.  And whether Mountain Valley chose the Stallworth Property as a matter of preference is beside the point: FERC concluded that the public convenience and necessity requires construction there rather than any possible alternatives.

Accordingly, the Fayette Zoning Code is preempted insofar as it applies to Mountain Valley's FERC-approved activities in connection with the Stallworth Station because it conflicts with congressional purposes and objectives outlined in the NGA and by FERC.

C. Permanent Injunction

The scope of Mountain Valley's requested injunctive relief informs the permanent injunction analysis.  An injunction's scope should be restricted to only that which is "necessary to provide complete relief to the plaintiff." PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir.

2011) (quoting Kentuckians for Commonwealth v. Rivenburgh, 317 F.3d 425, 436 (4th Cir. 2003)).  In other words, an injunction cannot be overbroad.  Kentuckians for Commonwealth, 317 F.3d at 436; accord McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012).  Here, the injunctive relief sought is commensurate with the court's declaratory judgment: Mountain Valley seeks to enjoin the Commissioners from enforcing the Fayette Zoning Code against it insofar as the Fayette Zoning Code applies to its FERC-approved activities in connection with Stallworth Station. (See Verified Compl. WHEREFORE Clause Pt. 2.)

Importantly, Mountain Valley does not request an injunction directing the Commissioners to re-zone the entire Stallworth Property to H-1 Heavy Industrial, (see Mountain Valley Reply 19), which would be more than necessary to build the Stallworth Station, (see Cooper Decl. ¶ 7).  It also bears re-emphasis that Mountain Valley's activities, including those associated with the Stallworth Station, are circumscribed by FERC's regulation and oversight.  So, enjoining the Commissioners from enforcing the Fayette Zoning Code against the Stallworth Station would not give Mountain Valley carte blanche to do whatever it wants: Mountain Valley can do only what FERC authorizes, just like the Fayette Zoning Code is preempted by only what FERC authorizes.

With the requested injunction's scope in mind, the court finds that a commensurate injunction naturally flows from a declaration that an enforced local law is preempted by federal law.  In practical effect, Mountain Valley's requested injunction will simply enjoin the Commissioners from enforcing a law to the extent that they are already not allowed to enforce pursuant to the declaratory judgment entered herein.  Some courts have awarded injunctive relief as an incident to declaratory judgment in similar circumstances.  See Valley View Health Care, Inc. v. Chapman, 992 F. Supp. 2d 1016, 1033, 1050 (E.D. Cal. 2014); Ass'n of Banks in Ins., Inc. v. Duryee, 55 F. Supp. 2d 799, 813 (S.D. Ohio 1999); Sandhills Ass'n of Realtors v. Village of Pinehurst, No. 1:98CV00303, 1999 U.S. Dist. LEXIS 19094, at *49 (M.D.N.C. Nov. 8, 1999); cf. Hickory Fire Fighters Ass'n v. Hickory, 656 F.2d 917, 922 (4th Cir. 1981) (stating that "appropriate injunctive relief . . . is in order" if the district court on remand finds that "city council meetings are presently dedicated as public forums at certain times" that the city council forbade certain individuals to speak).

Nevertheless, to obtain a permanent injunction, a plaintiff must prove four elements "[a]ccording to well-established principles of equity":

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

31

> damages, are inadequate to compensate for that injury;
> (3) that, considering the balance of hardships between
> the plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not
> be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see
also EQT Prod. Co. v. Wender, 191 F. Supp. 3d 583, 589 (S.D. W.
Va. 2016) (quoting eBay). Although "[s]atisfying these four
factors is a high bar," SAS Inst., Inc. v. World Programming
Ltd., 874 F.3d 370, 385 (4th Cir. 2017) (citing and quoting
Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010),
and Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)), the
circumstances described above portend Mountain Valley's ready
success.

First, this court has recently recognized that
Mountain Valley's harms - economic losses unrecoverable at the
end of litigation, construction scheduling modifications, and
tarnished business reputation, (see Cooper Decl. ¶¶ 12-21) - are
irreparable.  Mountain Valley Pipeline, LLC v. An Easement, 2018
U.S. Dist. LEXIS 28755, at *32-33.  Second, like Mountain Valley
contends, (Mountain Valley Resp. 23), legal remedies are
unavailable to it because the Commissioners are immune from suit
under The Governmental Tort Claims and Insurance Reform Act.
See W. Va. Code Ann. §§ 29-12A-3 (commission is a county
subdivision under this article), -5(a)(1) (political subdivision

32

immune from liability for legislative or quasi-legislative functions), -5(a)(9) (political subdivision immune from liability for exercise of licensing powers) (LexisNexis 2018). Third, the balance of hardships counsels in favor of equitable relief since Mountain Valley possesses a certificate of public convenience and necessity from FERC and accrues harm from delay, while the Commissioners would simply be prohibited from enforcing a local law to the extent that they are already not allowed to enforce it.  And fourth, the Fourth Circuit maintains "that a certificate is imbued with the public interest pursuant to the authority granted under the NGA." Mountain Valley Pipeline, LLC v. An Easement, 2018 U.S. Dist. LEXIS 28755, at *35 (citing E. Tenn. Nat. Gas Co. v. Sage, 361 F.3d 808, 830 (4th Cir. 2004)).

Accordingly, Mountain Valley is entitled to a permanent injunction preventing the Commissioners from enforcing the Fayette Zoning Code insofar as it applies to Mountain Valley's FERC-approved activities in connection with the Stallworth Station.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Mountain Valley's motion for summary judgment be, and hereby is, granted. It is further ORDERED as follows:

1. The parties are directed to furnish within twenty days of the entry of this memorandum opinion and order proposed language for a judgment order granting Mountain Valley declaratory and injunctive relief. The parties may jointly file such language to the extent they can agree.

2. As an attachment to its proposed judgment order language, Mountain Valley is directed to furnish a plat or survey, together with a metes and bounds description, providing definition to the area affected by the declaratory and injunctive relief.

3. Mountain Valley is directed to notify the court once construction of the Stallworth Station is complete and Mountain Valley has begun occupying the approximately seven acres needed for the operation of the Stallworth Station.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: August 29, 2018

John T. Copenhaver, Jr.
United States District Judge